Thank you, Judge. May it please the Court, Lawrence Rolfing on behalf of Griselda Farias. I'd like to begin the discussion this morning by answering the Court's specific question framed in the order from earlier this week. The answer is no. Based on the record as a whole, a reasonable person would not accept the vocational expert's contradicted testimony in this case that there are 3,600 hostess jobs in the Los Angeles area when published statistics that are regularly relied upon by vocational experts indicate that there are 1,007 in a much larger vocational group including seven occupations, not just in Los Angeles, but Los Angeles, Orange, Riverside, and San Bernardino counties. This Court in Taylor... It wasn't pointed out to the ALJ, was it? It was not pointed out to the ALJ. To the VE? It was not pointed out to the VE. The VE's methodology was not described in any fashion before the ALJ. I think that leaves us with, to borrow from the Seventh Circuit's Allard decision, I think the task for this Court is could a reasonable ALJ rely on the vocational expert's testimony under the facts of this case given the record as a whole? It's not clear to me anyway whether this was a mistake by the vocational expert by citing the wrong category or it seems like a clerical or ministerial error. It may be the explanation. The hostess doesn't match up with the job description, so that's why I'm wondering why it wasn't raised. If anybody bothered to look to see what the category was that she actually was citing. A dance hall hostess is a far cry from what one thinks of in the ordinary use of the term hostess. You don't limit it to dance halls. The first reaction is it's a restaurant hostess. That seems to be what she was operating on, but that's not the category that she cited. So why wouldn't we just remand this to the ALJ if your point is correct and get it straightened out there? Well, that's what I've asked for in the opening brief and in the reply brief. We didn't ask for the reversal for the payment of benefits. We asked for this case to be sent back because there are too many serious questions. The vocational expert clearly erred with respect to the ticket taker and the copy messenger occupation. Those jobs do not fit what she'd said the occupations require, which was occasional handling and no fingering. She was wrong about that. We know that. That violates this court's decision in Misaci. It also violates the commissioner's ruling in 004P. So we've already eliminated those, and if the court's supposition is correct that there is a significant factual error going on here, this case needs to go back in front of an ALJ. Well, maybe we ought to have you conferred with counsel for the administration. Your Honor, the answer is no. The answer is yes. We conferred at the district court level. I mean after the court's order. We have not talked about that. Well, why don't we hear would it be helpful? What do you think? It would be helpful. Yeah. That's it. Judge Gregersen, should we hear from the government? Sure. Why don't you tell us what the government's position is, and then we don't spend some time on a wild goose chase. Good morning, Your Honors. Elizabeth Fair for the Acting Commissioner of Social Security. Carolyn Coleman. I think it's possible that the V.E. identified the wrong job here, and if you look at that description of the job, it's easy to kind of laugh at it and say it wasn't that job, but jobs do evolve. The last time that one was updated in the dot was 1977, and if you look at it in terms of where people go dancing today, I think it's not unreasonable to say that. Where do they go dancing? Nightclubs, music halls where there's concerts that you pay to go to, community centers. Around Pasadena, where do they go dancing? Well, I'm not from this area, but I'm sure they go dancing in nightclubs. This is the Los Angeles area. There are a lot of clubs like that. I think it's – I don't know. I lived here all my life. I don't know where there's a single dancing club. I'm not saying that this is a dancing club the way this sort of archaic description is in the dot. I'm saying that V.Es are charged with knowing what the local job scenes are, and there's certainly a possibility that this job has evolved and it hasn't changed according to the dot's language. Well, but that's only part of the problem, because if one looks to any category like the BLS data about restaurant hostesses, those numbers come in pretty close to what the V.E. testified to. That's true, but restaurant hostess jobs are semi-skilled. Maybe, and, you know, semi-skilled, and it has the fingering and handling requirements that she can't do. So that's why it's significant. Well, and that's why I think it's a reasonable explanation that this V.E. is talking about a job that has evolved from what that description is in the dot. It's part of a whole category. The category is not – that she cited is not – if you look to it, has all sorts of – dance hall hostess is what she meant. At least the BLS, as I understand it, lumps it in with a bunch of other kinds of categories like house sitter and parlor chaperone. It's a subset of a thing. So unless you're sure that she really did mean dance hall hostess and it's evolved, I don't think that's supported by the record. Well, first of all, I don't think it's – none of us are vocational experts. This was an expert charged with providing this testimony at the hearing, and no one challenged it. No one has challenged this job description until your order on Monday night. So I think we are – Some people make mistakes, don't they? But also some people know things that we don't know. And I do think – and I can give you another example from the dot. The job disc jockey is still identified in the dot as people who work for radios. Everybody in today's world would think a disc jockey is somebody who plays music at gatherings. So things change, and I think – I don't. I'm sorry. Well, that's a – I'm talking to the wrong panel here. It's a more common definition of the job. The ALJ is so much younger than we are that they understand all this stuff? I'm guessing the vocational expert was younger. Right. But the ALJ wasn't, so he didn't pick up on it. I do not know the age of the ALJ. But I do know that we are not vocational experts. Well, I understand. This evidence was challenged. Let's just catch the chase. Let's suppose the – made a mistake.  Well, what if she cited to a category? Because if she cited it to restaurant hostess, the record doesn't support that this claimant would be able to do that kind of job, right? So wouldn't it be an easy matter for you all to check and just find out from the V and have the numbers checked? You know, there's a very prominent controversy going on in the economics world where the experts from Harvard that everybody has been relying upon made a projection about what happens in countries where their debt reaches a certain limit. And somebody found out that their Excel spreadsheet had an error in it. And that's all in the news right now. So now these are professors, and they're the experts, but they made a calculation mistake. And so they've just yesterday had to retract their study. So why can't you all check to find out whether the VE, if asked, could go back and look at her citation and see if there's an explanation for it? Well, my answer to that is that it wasn't – no one assumed this was a mistake. Yeah, I know. So this claimant loses because the VE's mistake is made, and therefore she doesn't get benefits even though she should have actually gotten them. Well, then you can also look at the copy messenger job. I don't think it's clear from this record that her testimony is inconsistent with the doc. That's another job on this record that has 23. Let's assume we don't think those are supported, okay? Okay. Well, then if you're going to assume that they're all wrong, we have to go back, of course. But I do – Well, you know, she's got terrible arthritis in her hands. Isn't that right? Well, I don't think the record supports that it's terrible arthritis. There's very little medical evidence in this record. Arthritis. Arthritis. It sounds terrible to me. Okay. What other disabilities does she have? That's her only impairment, rheumatoid arthritis. But if you look at the medical record in this case, it's very, very sparse. And no, the consultative examiner and the state agency doctors didn't find any manipulative limitations. ALJ's RFC finding is actually very generous if you look at this record. So I don't think this is a case where this is – there's an egregious result here if you find that that copy messenger job or is available in significant numbers. But I really want to emphasize that no one challenged this evidence at the hearing. We have an expert. We have Bayless saying that unchallenged expert testimony is substantial evidence that an ALJ can rely on. And what we have here – I mean, the dot has these artificially precise descriptions of jobs that aren't necessarily – That's all right. But, you know, they have her down here. I mean, she has arthritic hands. And they have here that she can work as a ticket taker, a copy messenger, and a hostess. But all of that involves frequent handling of paper and use of fingers. The hostess job doesn't. Well, it all depends on what a hostess does, you know. Right. But I don't think that's for us to decide given the nature of this record. Well, my job is to make decisions, you know. I've had a lot of experience with these experts. And I've got a lot of stories to tell about them, too. Like some guy that couldn't stand to be around people. He had to just work at night. And he had just a terrible personality. And it goes on like that. And the expert was asked, you know, what jobs are available for him in the national economy. And he said, I have the perfect job for him. And that is that he can be a night watchman in a mortuary. He doesn't have to deal with people and have to talk to them. That must have been the case. He won't disturb them. I mean, the whole courtroom, you know. You get answers like this. Yes. Well, and I've thought about those mortuary jobs a lot lately. Well, I think, Your Honor, there's a lot of absurdity in a disability case. And part of it is that we are stuck with this dictionary of occupational titles that does have these very precise ways of describing jobs that in the real world don't necessarily mean that, which is why we have vocational experts. And that's this Court's law, the Social Security rulings all say the local experts are supposed to be more knowledgeable about this than these publications. And just one last thing is the publication that my opponent is relying on. Well, you know, the local experts are just hired guns. Yeah. Well, they are experts in this Court's law. It does say they're experts. Most of them are self-appointed experts. Well, I don't know about that. But the U.S. publishing evidence that my opponent submitted to the Appeals Council says that this data is intended to be used in conjunction with local market expertise and research. It says its estimates and local research should be given more weight, and also that no government agency reports jobs by dot code, which is what we have here, not the category in question. So I think we can rely on this vocational expert's testimony, given what's on the record. But my time is up. But if this panel concludes that the V.E. may have made a serious error and that there was enough challenge by the complainant here, the petitioner, before the Appeals Council and this Court, it probably would make sense to remand, wouldn't it? If you're assuming that the job is wrong, that the code is wrong, that's true. Not based on the numbers, though, because the publication my opponent is relying on says that the numbers should be modified by local experts. Thank you. Thank you. I hate to belabor the point, but I think the case should go back. I think it's clear on the record. Well, don't. Pardon? Don't. Don't belabor it. Then I submit. Thank you. We have a good job for you. This matter stands submitted.
judges: Daniel, Pregerson, Fisher